UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**VICKIE DELLINGER,**

        **Plaintiff,**

v.                                                         **Case No. 3:08-cv-00219**
                                                             **Judge Thomas M. Rose**

**JOHN E. POTTER, Postmaster General,**

        **Defendant.**

---

ENTRY AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT (DOC. 6)

---

      This matter is before the Court for decision on Defendant John E. Potter's Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment. Doc. 6. Documents supporting the motion were also filed with the Court. Docs. 7-1 to 7-9.[1] The instant motion requests that the Court dismiss Plaintiff's claim for enforcement of an Equal Employment Opportunity Commission (EEOC) Order against Defendant. Plaintiff's sole cause of action asserts, among other things, that by miscalculating the amount of interest on her back pay award and not paying for her increased tax burden, Defendant has only partially complied with the EEOC Order and that Plaintiff is entitled to further relief in the amount of $44,968.17, plus unspecified compensation for lost employment benefits and attorney's fees for work since June 20, 2007, under the Order and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* (2006) (Rehabilitation Act). Doc. 1.

---

[1] Doc. 7 and its attachments were mistakenly identified by the clerk as a separate motion. In fact Doc. 7 merely supports the motion made in Doc. 6.

1

**I. Factual Background**

Around 1989, Plaintiff Vickie Dellinger was injured in an automobile accident unrelated to her work as a clerk at the Troy, Ohio Post Office. Doc. 7-2 at 2. Her injuries included permanent, partial paralysis of her non-dominant arm and brain damage, which led to memory problems and difficulty walking. *Id.* In 1990, Plaintiff returned to the post office, gradually working more hours until she resumed a full-time schedule. *Id.* at 3. Due to her seniority, Plaintiff was able to select a preferable clerking assignment in order to perform a full day's work while complying with her medical restrictions. *Id.* In 1999, after working under this arrangement for several years, she was terminated from employment. Doc. 1, ¶¶ 5-6; Doc. 7-2 at 4-5. Plaintiff alleged in an internal EEO complaint that her termination amounted to illegal employment discrimination based on disability. Doc. 1, ¶¶ 5-6; Doc. 7-2 at 4-5.

Defendant John E. Potter is being sued in his official capacity as the Postmaster General of the United States Postal Service and was Plaintiff's employer for the purposes of this action. Doc. 1, ¶ 2.

In 2003, an EEOC administrative judge ruled that Defendant violated the Rehabilitation Act and ordered compensation for the Plaintiff.[2] Doc. 1, ¶ 6. Defendant appealed the administrative judge's ruling, which was affirmed by the EEOC Office of Federal Operations on September 29, 2005.[3] Doc. 1, ¶ 8. The Office of Federal Operations acts on behalf of the EEOC to handle appeals involving federal employers. 29 C.F.R. § 1614.404(a) (2009). The Office of Federal Operations ordered Defendant to take remedial steps, including, *inter alia*, reimbursing

---

[2] Some relevant statutes refer to the Civil Service Commission instead of the EEOC. The EEOC took over all Civil Service Commission functions related to the Rehabilitation Act under sections 3 and 4 of the 1978 Reorganization Plan No. 1, 43 Fed.Reg. 19,807 (1978), 92 Stat. 3781, reprinted in (1978) U.S.Code Cong. & Ad.News 9799.
[3] Defendant claims that both parties appealed the administrative judge's ruling, but this is not relevant to the Court's decision. Doc. 6 at 2; Doc. 7-6 at 14 ¶ 2.

Plaintiff for back pay; interest on the back pay award; the increased tax liability she would suffer from receiving the back pay as a lump-sum award, rather than over time; non-pecuniary compensatory damages of $10,000.00; lost employment benefits; and attorney's fees. Doc. 1, ¶ 8; Doc. 7-3 at 8-10.

On January 9, 2006, pursuant to 29 C.F.R. § 1614.110(a), Defendant issued its "final agency action," a letter acknowledging the Office of Federal Operations Order and directing its employees to fully comply with the Order. Doc. 7-4. The notice of final agency action also apprised Plaintiff of her rights to either file a civil enforcement action or continue with the EEOC process. *Id.*

Plaintiff continued with the EEOC process and claims she sent a letter to the Office of Federal Operations on January 11, 2006 alleging, pursuant to 29 C.F.R. § 1614.504(a), that Defendant missed several compliance deadlines set out in the Order.[4] Doc. 1, ¶ 11. After allegedly receiving no response from either Defendant or the EEOC, Plaintiff petitioned the Office of Federal Operations for formal enforcement of its Order, under 29 C.F.R. § 1614.503, on February 9, 2006. Doc. 1, ¶¶ 10-12; Doc. 7-5.

Between March 2006 and January 8, 2008, Defendant complied with most terms of the Order, including making payments to Plaintiff representing her back pay ($44,732.90), the portion of interest on the back pay which was undisputed ($33,037.57) (there remains a disputed portion of interest on the back pay), compensatory damages ($10,000.00), and attorney's fees for work through June 20, 2007 ($47,000.00). Doc. 1, ¶¶ 13-14, 16-18; Doc. 7-6 at 15-16. On

---

[4] ". . . If the complainant believes that the agency has failed to comply with the terms of a . . . decision, the complainant shall notify the EEO Director, in writing, of the alleged noncompliance within 30 days . . . . The complainant may request that the terms of settlement agreement be specifically implemented or, alternatively, that the complaint be reinstated for further processing from the point processing ceased." 29 C.F.R. § 1614.504(a) (2009)

3

March 26, 2008, 78 days after making its last payment to Plaintiff, Defendant submitted a compliance report, with supporting evidence, to the EEOC, claiming that it had fully complied with the Order.  Docs. 7-6 to 7-8; Doc. 6 at 4.

For reasons which are unclear, Defendant took much longer than ordinarily permitted to comply with parts of the Order.  *See* Doc. 1, ¶ 9.  Defendant had 60 days to fully comply with the entire Order, unless the Order specified a different time, under 29 C.F.R. § 1614.502(c).[5]  The Order's effective date was September 29, 2005.  Doc. 7-3 at 12-13.

The Order required Defendant to calculate the back pay and interest owed to Plaintiff (within 60 days, according to section 1614.502(c)) and pay that amount (or the undisputed part thereof) within another 30 days, resulting in a 90-day payment window.  Doc. 1, ¶ 8; Doc. 7-3 at 9.  But Defendant took nearly 22 months from the date of the Order to send back pay and interest, making payment on July 16 and July 17, 2007, respectively.  Doc. 1, ¶¶ 16-17; Doc. 7-8 at 1-4.

Defendant's payment of compensatory damages was also allegedly late (due 30 days after the Order); Plaintiff says this sum was paid in April 2006, more than five months after the Order.[6]  Doc. 1, ¶¶ 8, 14; Doc. 3 at 8, 10; Doc. 7-6 at 15.

Despite these unexplained delays, Plaintiff concedes that these payments were "in compliance" (or, for the disputed interest payment, "in partial compliance") with the Order.  Doc. 1, ¶¶ 14, 16-17.  Plaintiff claims she cooperated fully with the EEOC and Defendant by providing all information needed to calculate back pay and extra tax liability.  Doc. 1, ¶ 26.

---

[5] ". . . The relief shall be provided in full not later than 60 days after receipt of the final decision unless otherwise ordered in the decision."
[6] Defendant stipulates that the compensatory damages were paid, but makes no reference in its pleadings or evidence as to the date of payment.

4

One apparent violation of the Order which Plaintiff has not conceded was Defendant's delay in submitting the final compliance report. *See id.*, ¶ 9. Although the Order directed Defendant to submit a final compliance report within "30 calendar days of the completion of all ordered corrective action," and the final action performed was a payment to Plaintiff of $27,000.00 in attorney's fees on January 7, 2008, Defendant's last compliance report to the EEOC (Docs. 7-6 to 7-8) (the only compliance report submitted into evidence here) was dated March 26, 2008, 78 days later. Doc. 1, ¶ 8; Doc. 7-6 at 1; Doc. 7-8 at 16. Either the January 7th payment was, as Defendant claims, the fulfillment of the Order (in which case the final compliance report was late, missing its February 6, 2008 deadline by several weeks) or, as Plaintiff claims, more money is owed (in which case the March 26 report was not the final report and, thus, was not late, however, the outstanding payments are late).

Defendant's documentation, which was submitted to the EEOC as part of the March 26, 2008 compliance report, acknowledges an unresolved dispute over the calculation of interest and does not show calculations or payments for Plaintiff's increased tax liability or lost benefits. Doc. 7-6 at 16, ¶¶ 6-7 & 9-10; Doc. 7-8 at 3-15. Defendant submitted a joint stipulation to the Court (though the copy in evidence is unsigned and undated) which admitted that the issues of back pay interest, tax liability, and benefits remained unresolved. Doc. 7-6 at 13-17. This stipulation was also submitted to the EEOC in the March 26, 2008 compliance report. Doc. 7-6 at 1. Although nothing in the evidence shows that Plaintiff agreed to the stipulation, Plaintiff admits her agreement to its terms in the Complaint (Doc. 1, ¶¶ 16, 18-19) and in her brief opposing Defendant's motion (Doc. 11 at 2, 6).

However, despite simultaneously stipulating that there were unresolved issues,

5

Defendant, on the cover letter to its March 26, 2008 compliance report, claimed it was giving the EEOC all the information the EEOC requested and further asked, "that this case be taken off the EEOC docket to show that the United States Postal Service [Defendant] has met compliance regarding [this case]." Doc. 7-6 at 1.

The EEOC's Compliance and Control Division, apparently relying on Defendant's representation of full compliance, ceased its "compliance monitoring activity" on April 2, 2008 and notified Plaintiff of this cessation via a letter sent the same day. Doc 7-9. The Compliance and Control Division stated, "[Defendant] has provided us documentation sufficient to demonstrate that it has taken the corrective action(s) ordered in the Commission's decision." *Id.*

Plaintiff claims she is still owed additional interest on the back pay award, in the amount of $26,437.17; compensation for the increased tax liability she suffered by receiving the back pay as a lump-sum payment, in the amount of $18,531.00; unspecified compensation representing lost employment benefits; and unspecified attorney's fees for work since June 20, 2007. Doc. 1, ¶ 28; Doc. 11-2.

Plaintiff Dellinger brought the instant action on June 25, 2008 (captioned as a "petition for enforcement") to order Defendant Potter to fully comply with the Office of Federal Operations Order (Doc. 7-3). Doc. 1.

## II. Standard of Review

When a motion for dismissal under Federal Rule of Civil Procedure 12(b)(6) includes "matters outside the pleadings," which are not excluded by the Court, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The Court is not excluding the evidence submitted by the parties (Docs. 7-1 to 7-9; Docs. 11-1 to 11-2); therefore,

6

the Court will consider defendant's motion (Doc. 6) as one for summary judgment only.

Rule 56(c) provides that summary judgment will be granted by a court only when there is no genuine issue of material fact and the moving party (here, the Defendant) is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists. Fed. R. Civ. P. 56. The court must view the facts, and the inferences that flow from them, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir. 1987); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the non-moving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, (1986). Here, Defendant is entitled to summary judgment if Plaintiff failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). If there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505 (1986).

**III. Analysis**

In support of its motion, Defendant relies primarily on an unpublished district court case from Georgia, *Adcock v. Roche*, 2006 U.S. Dist. LEXIS 27335, 2006 WL 1285045 (M.D. Ga. 2006). *Adcock* instructively warns, "[f]ederal-sector employment discrimination claims are

governed by an intricate, detailed regulatory regime." *Id*. at *13-14.

### A.  Exhaustion of Administrative Remedies

As a sovereign, the United States "is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586 (1941); *see Young v. United States*, 71 F.3d 1238, 1244 (6th Cir. 1995).  "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text . . . and will not be implied . . . .  Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign."  *Lane v. Pena*, 518 U.S. 187, 192 (1996) (internal citations omitted).

"In permitting federal employees to sue under [T]itle VII [42 U.S.C. § 2000e *et seq.*], Congress conditioned the government's waiver of sovereign immunity upon a plaintiff's satisfaction of 'rigorous administrative exhaustion requirements and time limitations.'" *McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002) (quoting *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 833 (1976)).  In Rehabilitation Act claims, the plaintiff must exhaust administrative remedies through internal agency procedures and EEOC action.  *Hall v. USPS*, 857 F.2d 1073, 1078 n.4 (6th Cir. 1988).  The enabling regulations of both Title VII and the Rehabilitation Act provide that "[a] complainant who has filed an individual complaint is authorized under [T]itle VII . . . and the Rehabilitation Act to file a civil action in an appropriate United States District Court . . . (c) Within 90 days of receipt of the [EEOC's] final decision on an appeal."  29 C.F.R. §1614.407 (2009).  A petition for enforcement to the EEOC "is an 'appeal from a decision' of an agency within the meaning of [42 U.S.C. § 2000e-16]."  *Wilson v. Pena*, 79 F.3d 154, 166-67 (D.C. Cir. 1996).

Here, it appears, Plaintiff cooperated with the EEOC process for around eight years and,

8

after receiving the Compliance and Control Division's "cease monitoring" Letter sometime after April 2, 2008, she filed this action less than 83 days later on June 25, 2008.  Doc. 7-9.  While the Letter is not expressly worded as such, it seems to be the final action by the EEOC on Plaintiff's case.  *Id.*  The Letter does not mention or imply any opportunity for Plaintiff to appeal either the cessation of monitoring or the judgment that Defendant provided sufficient documentation to "demonstrate that it [took] the corrective action(s) ordered" by the Office of Federal Operations. *Id.*  The meaning of the Letter is clear: the EEOC will take no further action.

Therefore, this Court finds that Plaintiff Dellinger did fully complete the EEOC process and thereby exhausted her administrative remedies.

### B. Type of Civil Action

In actions properly brought under Title VII, plaintiffs are entitled to a trial *de novo* in which the slate is wiped clean and all questions (including whether the employer actually committed illegal discrimination and what, if any, relief is still owed to the plaintiff) are decided anew by the district court.  *Chandler v. Roudebush*, 425 U.S. 840, 846-47 (1976); *Scott v. Johanns*, 409 F.3d 466, 469 (D.C. Cir. 2005); *Abrams v. Johnson*, 534 F.2d 1226, 1227 (6th Cir. 1976) ("Section 2000e-5 . . . does not in express terms grant private employees a 'trial *de novo*,' but it is now settled law that its provisions have that effect."); *Timmons v. White*, 314 F.3d 1229, 1233 (10th Cir. 2003); *Vetter v. Frosch*, 599 F.2d 630, 631 (5th Cir. 1979); *see also Strittmatter v. Goodyear Tire & Rubber Co.*, 496 F.2d 1244, 1244 (6th Cir. 1974) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974)).  Unlike private employees, federal employees do not need a "right-to-sue" letter from the EEOC to bring a *de novo* action.  *See Laber v. Harvey*, 438 F.3d 404, 416-17 (4th Cir. 2006) ("This right of action is *identical* to the right of action

9

possessed by a private-sector employee who has received a right-to-sue letter.") (emphasis added) (citing *Chandler*, 425 U.S. at 844-45).

*De novo* actions require re-litigation of all "questions of fact and issues of law-- as if there had been no trial in the first instance." *Timmons*, 314 F.3d at 1233 (citing Black's Law Dictionary, (7th Ed. West 1999)).

But there is a second avenue available to some federal employee plaintiffs "who prevail in the administrative process but who—for whatever reason—fail to receive their promised remedy." *Scott*, 409 F.3d at 469. Because the decisions of the Office of Federal Operations are binding on federal employers (unlike EEOC rulings against private employers), 29 C.F.R. § 1614.502, these claimants may bring civil actions for enforcement of their Office of Federal Operations orders. *See Scott*, 409 F.3d at 469; *Herron v. Veneman*, 305 F. Supp. 2d 64, 74-75 (D.D.C. 2004) ("in 'enforcement' actions, an aggrieved federal employee brings a suit to enforce the terms of a final agency action . . . with which the agency has failed to comply"); *Wilson v. Pena*, 79 F.3d 154 (D.C. Cir. 1996); *Houseton v. Nimmo*, 670 F.2d 1375, 1378 (9th Cir. 1982) (citing 42 U.S.C. § 2000e-5(g) as authority for federal district courts to enforce final agency actions providing relief in Title VII claims); *Moore v. Devine*, 780 F.2d 1559, 1563 (11th Cir. 1986). In such enforcement suits, the only question before the court is "whether the employing agency has complied with the administrative disposition." *Scott*, 409 F.3d at 469.

Decisions from multiple circuits, including the Sixth Circuit, plainly state that civil enforcement is only available when the plaintiff is satisfied with the most recent findings and orders of the EEOC, and only seeks court action to ensure that the orders are fulfilled. *See Haskins v. U.S. Dep't of the Army*, 808 F.2d 1192, 1200 n.4 (6th Cir. 1987) (holding that an

enforcement action is valid only where a "federal employee has received a favorable determination at the administrative level"); *Timmons*, 314 F.3d at 1232 (finding that plaintiff was entitled to *de novo* review, but not enforcement, where he sought more relief than the EEOC awarded); *Scott*, 409 F.3d at 469 (holding that enforcement can decide "only whether the employing agency has complied with the administrative disposition") (citing *Moore*, 780 F.2d at 1563); *Laber*, 438 F.3d at 417.

"There is no third option. In the Sixth Circuit, and in the great majority of federal circuits, a plaintiff [may] either enforce his administrative remedy or obtain *de novo* review of his administrative action in its entirety, and there is no avenue for a partial *de novo* review . . . ." *Cook v. Geren*, 2008 U.S. Dist. LEXIS 20194, 2008 WL 686220, *13-14 (M.D. Tenn. Mar. 7, 2008); *see also Haskins*, 808 F.2d at 1200 n.4 (identifying the exclusive options for federal employees: (1) "go into federal courts to enforce" the administrative order or (2) obtain "a *de novo* hearing" in which "the district court is not bound by the administrative findings"); *Scott*, 409 F.3d at 467 (disallowing federal employee in Title VII claim to seek *de novo* review of EEOC's remedy while avoiding *de novo* review of the finding of discrimination); *Massingill v. Nicholson,* 496 F.3d 382, 384 (5th Cir. 2007) (holding that a federal complainant "cannot seek partial *de novo* review"); *Ellis v. England,* 432 F.3d 1321, 1325 (11th Cir. 2005) (refusing to permit "fragmentary *de novo* review"); *Morris v. Rumsfeld*, 420 F.3d 287, 293 (3d Cir. 2005) (rejecting "limited" *de novo* review).

Here, the EEOC process found Defendant liable and ordered relief for the Plaintiff. Had Plaintiff sought to judicially enforce the Order prior to the Compliance and Control Division's finding of compliance by the Defendant, her enforcement action here would have been

appropriate.[7] But the Compliance and Control Division's finding effectively nullified the Order. The most recent administrative disposition found, rightly or wrongly, that Plaintiff already received all the relief to which she is entitled.

Since she is challenging the most recent EEOC finding and, thus, asking for more relief than the EEOC believes she is due, Plaintiff is not entitled to bring an enforcement action. Indeed, an enforcement action could, at best, mirror the findings of the most recent EEOC disposition (the Compliance and Control Division Letter) and rule that Plaintiff is entitled only to the relief she already received. "[W]here a plaintiff seeks additional relief, he or she remains an aggrieved party" who must seek *de novo* review under 42 U.S.C. § 2000e-16(c) and Title 29 C.F.R. § 1614.407. *Timmons*, 314 F.3d at 1231 (internal citation omitted). The only path available to Plaintiff for the relief she seeks in this Court is a suit *de novo*.

In the instant action, as in *Adcock v. Roche*, the EEOC has made no determination of non-compliance.[8] 2006 U.S. Dist. LEXIS 27335, 2006 WL 1285045, *19 (M.D. Ga. 2006). But the Defendant here over-relies on *Adcock* because the court there did not examine the possibility of non-enforcement action (that is, *de novo* review). The court in *Adcock* only noted that 29 C.F.R. § 1614.503(g) appears to govern civil enforcement actions by federal employees and quoted,

---

[7] If Defendant had not yet submitted its final compliance report, then Plaintiff would have a separate right to civil enforcement. 29 C.F.R. § 1614.503(g) (2009) (". . . where an agency has failed or refused to submit any required report of compliance, the [EEOC] shall notify the complainant of the right to file a civil action for enforcement"); *see e.g. Carver v. Mukasey*, 2009 U.S. Dist. LEXIS 5964, 2009 WL 112846, *2 (W.D. Wash. Jan 13, 2009) (allowing enforcement action to progress because no final report was submitted). It would be too late to submit such a report now. *See e.g. Perez v. Potter*, 2008 U.S. Dist. LEXIS 42843, 2008 WL 2313090, *1 n.3 (S.D. Tex. May 30, 2008) (maintaining a civil enforcement action, despite the submission of a final compliance report to the EEOC, because the report came after the civil action was filed) (citing 29 C.F.R. §§ 1614.409 & 503). However, Defendant did submit a report that it intended to be final (the March 26, 2008 compliance report). Whether that report was adequate was up to the EEOC, which found that it was, and said so in the "cease monitoring" Letter.

[8] In fact, the Compliance and Control Division Letter here states that Defendant did fully comply with the Order. Such a finding (absent failure to file a required compliance report) forecloses the possibility of civil enforcement and leaves *de novo* review as the only civil remedy. *See e.g. Malek v. Leavitt*, 437 F. Supp. 2d 517, 524-25 (D. Md. 2006) (citing *Laber*, 438 F.3d at 417); *Timmons*, 314 F.3d at 1232; *Tshudy v. Potter*, 350 F. Supp. 2d 901, 906 (D.N.M. 2004).

"[w]here the [EEOC] has determined that an agency is not complying . . . , or where an agency has failed or refused to submit any required report of compliance, the [EEOC] shall notify the complainant of the right to file a civil action for enforcement of the decision." *Id.* at *18 (quoting 29 C.F.R. § 1614.503(g)). The court found that the EEOC made no determination of non-compliance, and that the defendant did not miss any required compliance reports, and then granted summary judgment without addressing (or foreclosing) other avenues for enforcement or *de novo* review. *Id.* at *24.

In *Malek v. Leavitt*, 437 F. Supp. 2d 517 (D. Md. 2006), the district court, facing similar issues to the instant action, granted summary judgment to the defendant on the question of enforcement and seemingly applied claim preclusive effect to its ruling, eliminating the possibility of *de novo* review. However, that broad ruling was justified by the plaintiff's recognition that *de novo* review was available, and his deliberate waiver of that option to instead attempt the enforcement route. *Malek*, 437 F. Supp. 2d at 524-25 (*de novo* review precluded when the complaint, multiple times, "emphasize[d] that [plaintiff did] not seek a *de novo* review").

Here, although Plaintiff did try to bring an enforcement claim, it is not at all clear that she would intend to forego other available avenues for relief (such as *de novo* review) had she known that enforcement was unavailable from the outset of her case. By itself, Plaintiff's Complaint (Doc. 1) states a case for civil enforcement because it does not mention that her EEOC appeal for enforcement was finally decided against her. Furthermore, the only document in the record which shows that final disposition (the "cease monitoring" Letter) only does so implicitly. Other communications to the Plaintiff from the EEOC were lengthy and detailed, often laying out step-

13

by-step instructions for her to exercise the available options (the Order even told Plaintiff who to name as the defendant if she chose to file a civil action). Yet the "cease monitoring" Letter did not explicitly say that it was a final ruling of the commission, it did not explain any of Plaintiff's options by which to challenge the finding of compliance, and it did not use language (such as, "final," "case closed," or "not appealable") that would lead a lay person to clearly understand the full effect of the Letter on Plaintiff's case.

Although Plaintiff is assisted by counsel in this case, the Supreme Court and lower courts have consistently described the process for bringing Title VII claims as one where claimants should be given more leeway on matters of technique and procedure than in other cases because Title VII is a statute designed for "remedial purposes" and the process is begun (and, sometimes, fully litigated) by lay persons, without the assistance of lawyers. *See Love v. Pullman Co.*, 404 U.S. 522, 526-27 (1972); *Oscar Mayer v. Evans*, 441 U.S. 750, 761 (1979); *EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 123-24 (1988); *LaFountain v. Martin*, 2009 FED App. 0403N, 2009 U.S. App. LEXIS 12045, 2009 WL 1546376, *5 (6th Cir. June 3, 2009) (unpublished) (citing *Kikumura v. Osagie*, 461 F.3d 1269, 1283-84 (10th Cir. 2006)); *see also Nichols v. Muskingum Coll.*, 318 F.3d 674, 678 (6th Cir. 2003) (noting that plaintiffs cannot be expected to guard themselves against mistakes or violations by the EEOC in the handling of their complaints) (citing *Love*; *Mitchell v. Mid-Continent Spring Co.*, 466 F.2d 24, 27 (6th Cir. 1972); *Roberts v. Ariz. Bd. of Regents*, 661 F.2d 796, 799 (9th Cir. 1981); *White v. Dallas Indep. Sch. Dist.*, 581 F.2d 556 (5th Cir. 1978)).

This leeway given to plaintiffs by Title VII is necessarily limited by the grant of sovereign immunity discussed above—the expressed regulatory framework still binds this Court.

However, the district courts are still empowered to grant summary judgment on an improper enforcement claim without precluding the filing of a proper complaint for *de novo* review. *See* Restatement (Second) of Judgments § 20(1)(b); *see e.g. Nolan v. Nicholson*, 2007 U.S. Dist. LEXIS 52623, 2007 WL 2119237 (W.D. Penn. July 20, 2007) (where district court dismissed improper enforcement action without prejudice to give plaintiff option of fixing defects in complaint or to file *de novo* suit); *DesRoches v. Potter*, 2006 U.S. Dist. LEXIS 38902, 2006 WL 1644542 (D.N.H. June 12, 2006) (dismissing enforcement action without prejudice to possible *de novo* review); *Ritchie v. Henderson*, 161 F. Supp. 2d 437 (E.D. Penn. 2001) (dismissing enforcement action without prejudice in order to allow separate *de novo* claim to proceed).

### C. Defendant's Motion

Because Plaintiff filed an action seeking enforcement of the EEOC Office of Federal Operations Order, but the available evidence (namely the Compliance and Control Division Letter, Doc. 7-9) shows that she is not entitled to civil enforcement, the Court finds that she fails to state a claim upon which relief can be granted. Because this finding required looking to evidence outside the pleadings, Rule 12(d) requires that the Court grant summary judgment to the Defendant.

## IV. Conclusion and Order

Defendant's motion for summary judgment (Doc. 6) is GRANTED. The instant case is DISMISSED with prejudice, as regards the summary judgment granted herein, and without prejudice, as regards Plaintiff's potential request for *de novo* review. Thus, the instant case shall be terminated from the docket of the United States District Court for the Southern District of

Ohio, Western Division at Dayton.

**DONE** and **ORDERED** in Dayton, Ohio, this Twenty-second day of July 2009.

                                                **/s/ Thomas M. Rose**
                                     _____
                                                  THOMAS M. ROSE
                                  UNITED STATES DISTRICT JUDGE